# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated, | |
| Plaintiff | Civil Action No. 24-10391 |
| v. | |
| MORGAN STANLEY & CO., LLC, | |
| Defendant | |

TO:   The Honorable Justices of the
      United States District Court
      District of Massachusetts
      United States Courthouse
      1 Courthouse Way
      Boston, MA 02210

## <u>NOTICE OF REMOVAL</u>[1]

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Rule 81 of the Federal Rules of Civil Procedure, and Rule 81.1 of the Local Rules of the United States District Court for the District of Massachusetts, defendant Morgan Stanley & Co., LLC ("Morgan Stanley") hereby gives notice of the removal of this action from the Commonwealth of Massachusetts Superior Court, Department of the Trial Court, Suffolk County, Massachusetts, Civil Action No. 2384CV02850 (the "State Court Action"), to the United States District Court for the District of Massachusetts, Eastern Division. The ground for removal is diversity jurisdiction. In further support, Morgan Stanley states as follows:

---

[1] By filing this Notice of Removal, Morgan Stanley does not waive any defenses—including any jurisdictional objections—that may be available to it and reserves all such defenses. In addition, Morgan Stanley does not concede that Plaintiff has stated any claim upon which relief may be granted, or that Plaintiff is entitled to any relief of any nature.

### PROCEEDINGS IN STATE COURT

On or about December 15, 2023, plaintiff Jane Doe[2] ("Plaintiff") commenced the Suffolk Superior Court Action by filing a Complaint (the "Complaint") in Suffolk Superior Court. A copy of the Complaint is attached hereto as <u>Exhibit A</u>. On or about that same date, Plaintiff also filed a Civil Action Cover Sheet, attached hereto as <u>Exhibit B</u>, and a Motion to Proceed Under a Pseudonym, attached hereto as <u>Exhibit C</u>.[3]  A copy of the Summons served upon Morgan Stanley on January 29, 2024 is attached hereto as <u>Exhibit D</u>.

### SUMMARY OF ALLEGATIONS IN THE COMPLAINT

The Complaint alleges that "In or around March 2022, Plaintiff applied to work at Morgan Stanley as a Senior Registered Service Associate in Boston." <u>Exhibit A</u>, at ¶ 1. On May 25, 2022, Plaintiff was allegedly offered a position which she accepted and on May 26, 2020 she was notified that she "must complete all regulatory and criminal background checks before [she] can start with the Firm." *Id*., at ¶ 6. The Complaint further alleges that Plaintiff's conditional offer of employment was "rescinded because of her criminal history information." *Id*., at ¶ 12.

In her one-count Complaint, Plaintiff alleges that Morgan Stanley violated the Massachusetts criminal history law, G. L. c. 151B, §4(9), and seeks damages "for all lost wages and benefits, damages for emotional distress, punitive damages, and damages for all other losses to which Plaintiff and members of the class are entitled, as well as interest and attorneys' fees and costs." *Id*., at 15; 29.

---

[2] Plaintiff filed a Motion to Proceed Under a Pseudonym which is still pending in the Superior Court. Morgan Stanley is using the pseudonym until the Court rules on the pending motion.

[3] The State Court entered the following: "Endorsement on Motion to proceed under a pseudonym (#3.0): No Action Taken. No action taken pending service of process and ability of Defendants to oppose. (Dated: 12/18/23)."

## TIMELINESS OF REMOVAL

Morgan Stanley was served on January 29, 2024. *See* Exhibit D. The Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is filed within (30) days of the Complaint's service on Morgan Stanley.

## JURISDICTION

Pursuant to 28 U.S.C. §1332(a), diversity subject matter jurisdiction in federal court exists when there is diversity between the plaintiff and all properly named defendants, which are citizens of different states, and the amount in controversy exceeds $75,000. The jurisdiction of the federal courts is measured as of the date that the state court action was filed. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004).

### 1.    Complete Diversity Exists Between Plaintiff and Morgan Stanley.

Federal court diversity jurisdiction requires complete diversity of citizenship between the parties. *See American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*, 362 F.3d 136, 139 (1st Cir. 2005).

Plaintiff alleges in the Complaint that she is "an adult resident of Dorchester, Massachusetts." *See* Exhibit A at ¶ 2. Accordingly, Plaintiff is a citizen of Massachusetts for purposes of federal court diversity jurisdiction. *See Aponte–Dávila v. Municipality of Caguas*, 828 F.3d 40, 46 (1st Cir. 2016) ("For purposes of diversity, a person is a citizen of the state in which he is domiciled.") (quoting *Padilla–Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008)).

For purposes of diversity jurisdiction, citizenship of an LLC is "determined by the citizenship of all of its members." *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006). A corporation "shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

3

Morgan Stanley & Co., LLC is, and was at the time the State Court Action was filed, a Limited Liability Company organized and existing under the laws of the State of Delaware, with its principal place of business in New York. Morgan Stanley & Co., LLC has one member: Morgan Stanley Capital Management, LLC, a Limited Liability Company organized and existing under the laws of the State of Delaware, with its principal place of business in New York. Morgan Stanley Capital Management, LLC has one member: Morgan Stanley, a Delaware corporation with its principal place of business in New York.

Because Plaintiff is a citizen of Massachusetts, and Morgan Stanley is a citizen of Delaware and New York, there is complete diversity of citizenship between the parties.

### 2. The $75,000 Amount in Controversy Requirement is Satisfied.

The amount in controversy based on the allegations in the Complaint and Civil Action Cover sheet exceeds $75,000. *See Composite Co. v. Am. Int'l Grp., Inc.*, 988F. Supp. 2d 61, 74 (D. Mass. 2013) ("Defendants can satisfy their burden by relying on the face of the complaint in the underlying case, by alleging facts in its notice of removal to support its amount in controversy allegation, or by submitting summary judgment type evidence.") (internal quotation marks and citations omitted).

Morgan Stanley denies that it is liable to Plaintiff on any of the theories alleged in the Complaint. Nevertheless, the amount in controversy is set by the amount claimed in Plaintiff's Complaint. Plaintiff's Complaint seeks "An award of all damages recoverable under Massachusetts Law." *See* Exhibit A at Request for Relief ¶ 3. Plaintiff seeks "damages for all lost wages and benefits, damages for emotional distress, punitive damages, and damages for all other losses to which Plaintiff and members of the class are entitled, as well as interest and attorneys' fees and costs." *Id*. at ¶ 29.  Plaintiff's Civil Action Cover Sheet states that Plaintiff is seeking "Class damages available under M.G.L. c. 151B, the amount of which is currently unknown but at

least $50,000. Further, the job offer that she alleges was unlawfully rescinded paid $40.87 per hour—which equates to $85,009.60 per year (exclusive of other benefits such as medical, dental, vision, life and disability insurance). A redacted version of the conditional employment offer is attached hereto as Exhibit E. Back pay between May 2022 and present, in addition to the other damages Plaintiff seeks, would exceed $75,000.

## VENUE

Venue is proper in the United States District Court for the District of Massachusetts, Eastern Division, because this is "the district and division embracing the place where" the State Court Action was filed and is pending. 28 U.S.C. § 1441(a).

## SERVICE OF NOTICE OF REMOVAL

Other than the Complaint, Civil Action Cover Sheet, Summons, and the pending Motion to Proceed Under a Pseudonym attached hereto as Exhibits A–D, Morgan Stanley has been served with no other process, pleadings or orders in the State Court Action. *See* 28 U.S.C. § 1446(a). As required by 28 U.S.C. § 1447(b) and Rule 81.1 of the Local Rules of the United States District Court for the District of Massachusetts, certified or attested copies of all records, documents and docket entries obtained from the State Court Action will be filed with this Court following the filing of this Notice of Removal.

In addition, pursuant to 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, Morgan Stanley shall provide written notice of the Notice of Removal to Plaintiff and file a copy of the Notice of Removal with the Clerk of the Suffolk Superior Court. A copy of the state court notice to be filed (without its exhibits) is attached hereto as Exhibit F.

**WHEREFORE**, Morgan Stanley hereby removes the State Court Action, and requests that this Court maintain jurisdiction over it as provided by law.

Dated: February 16, 2024                Respectfully submitted,

                                        /s/ Justin F. Keith
                                        Justin F. Keith, BBO #667953
                                        justin.keith@gtlaw.com
                                        **GREENBERG TRAURIG**
                                        One International Place, Suite 2000
                                        Boston, Massachusetts 02110
                                        (617) 310-6000 *Telephone*
                                        (617) 310-6001 *Facsimile*

                                        *Attorneys for Morgan Stanley & Co., LLC.*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 16th day of February, 2024.

                                        /s/ Justin F. Keith
                                        Justin F. Keith

# EXHIBIT A

ER

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, ss.                                     Civil Action No.

JANE DOE, on behalf of                )
herself and all others similarly situated,   )
                                                         )
          Plaintiff                              )
                                                         )
v.                                                    )
                                                         )
MORGAN STANLEY & CO., LLC,     )
                                                         )
          Defendant                          )

## **COMPLAINT AND JURY DEMAND**

### **Introduction**

1.       This action is brought by a former employment applicant against Morgan

Stanley & Co., LLC ("Morgan Stanley"). Plaintiff brings this claim on behalf of herself

and all others similarly situated, alleging that Morgan Stanley's hiring practices violate

Massachusetts law. More specifically, Morgan Stanley's hiring practices violate M.G.L.

c. 151B, by requesting applicants to disclose information about protected criminal history

information, by keeping records of such information, and by using application forms that

request such information. Plaintiff seeks, among other forms of relief for herself and the

class, injunctive relief, lost wages and benefits, damages for emotional distress, punitive

damages, interest, and attorneys' fees and costs, all as provided for by law.

### **Parties**

2.       Plaintiff is an adult resident of Dorchester, Massachusetts. Plaintiff is

Black. Plaintiff is proceeding in this matter using a pseudonym for her real name. She is

using a pseudonym in order to protect private information about her criminal record

history and to ensure that others are not deterred when bringing similar actions to protect their rights under Massachusetts law.

3.     Defendant Morgan Stanley & Co., LLC is a Delaware limited liability company. Morgan Stanley has an office in Boston, Massachusetts, as well as offices throughout the United States.

### Factual Allegations

4.     In or around March 2022, Plaintiff applied to work at Morgan Stanley as a Senior Registered Service Associate in Boston. She completed an online application, as well as a questionnaire for a pre-hire review by Morgan Stanley's Compliance Department.

5.     On or about May 25, 2022, after the pre-hire review by Morgan Stanley's Compliance Department was completed, she was offered the position, which she accepted.

6.     On or about May 26, 2022, Plaintiff received an email from Morgan Stanley, which read in part as follows:

> Hello [Jane],
>
> We have received your signed offer letter and you may now begin the onboarding screening process.
>
> As part of the Firm's efforts to mitigate employment risk, all U.S hires are required to clear criminal, regulatory and fingerprint checks before confirming a start date. You must complete all regulatory and criminal background checks before you can start with the Firm. Following successful clearance of the regulatory and criminal checks, we will be in touch with you to request your preferred start date.  You may continue the onboarding process while other background information is being verified (employment, education, military history, etc). …

2

7.      On June 4, 2022, Plaintiff received an email that stated in part, "Our records indicate that, as of today, you have not completed one of the required tasks for your background check. As a reminder, you are required to complete all background check and other required forms before your first day of employment."

8.      On information and belief, Plaintiff submitted all required forms and authorizations.

9.      During the background check process, Plaintiff was asked to provide further information about parts of her criminal history, including history protected under Massachusetts law, which includes the following: "(i) an arrest, detention, or disposition regarding any violation of law in which no conviction resulted, or (ii) a first conviction for any of the following misdemeanors: drunkenness, simple assault, speeding, minor traffic violations, affray, or disturbance of the peace, or (iii) any conviction of a misdemeanor where the date of such conviction or the completion of any period of incarceration resulting therefrom, whichever date is later, occurred 3 or more years prior to the date of such application for employment or such request for information, unless such person has been convicted of any offense within 3 years immediately preceding the date of such application for employment or such request for information, or (iv) a criminal record, or anything related to a criminal record, that has been sealed or expunged pursuant to chapter 276." M.G.L. c. 151B, § 4(9).

10.      For example, on or about July 6, 2022, Plaintiff received an email from Morgan Stanley, which read in part as follows:

> Dear [Jane],
>
> In connection with your application for employment, you authorized Morgan Stanley to conduct a background investigation.

3

**Why am I receiving this email?**

Your background check returned the below findings. Before we can proceed with the hiring process, you are required to provide the below indicated documents for <u>each</u> incident. The documents should be submitted to Morgan Stanley Onboarding Screening no later than ***Wednesday, July 13th, 2022***.

    **Findings:**

    [ARREST INFORMATION REDACTED]

**Action Required:**
You are required to provide the below documentation for each finding:

**1.    A <u>SIGNED</u> Personal Statement regarding <u>each</u> incident (use attached template)**

    a.    Please print the attached template, complete it in full, and return it to us. Please remember to sign and date the statement.

    b.    Please include a detailed narrative of the facts and circumstances of the event, including but not limited to what led to the event and the final outcome.

**2.    Initial Police Report and or Incident Report for <u>each</u> incident (contact the arresting agency/police department and provide the Initial Police Report or Incident Report)**

**3.    Court Documentation for <u>each</u> incident (contact the applicable courthouse and provide the following court documents with an official court stamp or judge/clerk signature):**

    a.    Final disposition

    b.    Indictment

    c.    Any amended charges

    d.    Sentencing information

    e.    Case summary

Should your efforts to obtain documentation be affected by the closures to courthouses and other government offices, please provide the Morgan Stanley Background Screening Team weekly updates regarding the status of your case.

> **Note**: If you are sending documentation that contains either your SSN or
> DOB, please password protect the document(s) and send to us via email. You
> may also fax the document(s) to us at 212-507-6903.
>
> **Please reply directly to this e-mail with your response.**

11.     The "incidents" identified in that email included arrests that did not lead to

convictions. As a result, Morgan Stanley's request that Plaintiff provide additional

information about those incidents violated M.G.L. c. 151B, § 4(9). At the time she was

going through this background check, she was not aware of the provisions of M.G.L. c.

151B, § 4(9). Because she wanted the job at Morgan Stanley, she followed all of Morgan

Stanley's instructions and provided whatever information was requested of her to the best

of her ability. On information and belief, Morgan Stanley kept records of her responses.

12.     On or about August 12, 2022, Plaintiff received a call from the Morgan

Stanley, who told her that her job offer had been rescinded because of her criminal

history information.

13.     On information and belief, Morgan Stanley's recission of Plaintiff's job

offer was based, in part, on information that Plaintiff was forced to disclose but that is

protected under M.G.L. c. 151B.

14.     Plaintiff called and asked Morgan Stanley if there were any other positions

at the company for which she would be eligible. She was told that Morgan Stanley did not

hire anyone with any criminal record as a matter of company policy.

15.     As set forth above, Morgan Stanley used application forms that requested

protected criminal history information, kept records of such protected information, and

requested applicants to disclose information about such protected information, all in

violation of Massachusetts law.

5

perior Court - Suffolk
icket Number

16.     It is well documented that communities of color, including Black

communities, are arrested and convicted at rates significantly higher than the white

population. For example, as noted in the U.S. Equal Employment Opportunity

Commission's *Enforcement Guidance on the Consideration of Arrest and Conviction*

*Records In Employment Decisions Under Title VII of the Civil Rights Act of 1964* (Apr.

25, 2012) ("*Guidance*"),

> Arrest and incarceration rates are particularly high for African American and
> Hispanic men. African Americans and Hispanics are arrested at a rate that is 2
> to 3 times their proportion of the general population. Assuming that current
> incarceration rates remain unchanged, about 1 in 17 White men are expected
> to serve time in prison during their lifetime; by contrast, this rate climbs to 1
> in 6 for Hispanic men; and to 1 in 3 for African American men. *Guidance* § II
> and nn. 10-14.

To put those numbers differently, for every 100 White men, about 6 are expected to serve

time in prison, but for every 100 Black men, about 33 are expected to serve time in

prison. As a result, Black men are over five times more likely to serve time.

17.     As the *Guidance* further notes, it is not just convictions that

disproportionately affect Black people, but arrests as well.

> Nationally, African Americans and Hispanics are arrested in numbers
> disproportionate to their representation in the general population. In 2010,
> 28% of all arrests were of African Americans, even though African Americans
> only comprised approximately 14% of the general population. In 2008,
> Hispanics were arrested for federal drug charges at a rate of approximately
> three times their proportion of the general population. Moreover, African
> Americans and Hispanics were more likely than Whites to be arrested,
> convicted, or sentenced for drug offenses even though their rate of drug use is
> similar to the rate of drug use for Whites. *Id.* § V.A.2. and nn. 65-68.

18.     To the extent Morgan Stanley relies on rules issued by the Financial

Industry Regulatory Authority ("FINRA") to justify its actions, FINRA Rule 3110 plainly

states that "firms must ensure that such background investigations are conducted in

accordance with all applicable laws, rules and regulations, including federal and state requirements, and that all necessary approvals, consents and authorizations have been obtained." FINRA Rule 3110, available at https://www.finra.org/rules-guidance/notices/15-05.

19.     Plaintiff filed a timely charge of discrimination at the Massachusetts Commission Against Discrimination more than 90 days before filing this action.

### Allegations as to Class

20.     Plaintiff seeks to certify a class that includes all individuals who applied for employment in Massachusetts at Morgan Stanley during the relevant limitations period and who were subjected to unlawful inquiries or actions regarding protected criminal history information.

21.     On information and belief, given the size of Morgan Stanley, there are more than 40 individuals in the proposed classes.

22.     Given that the hiring practices described above were followed by Morgan Stanley on a company-wide and consistent basis, there are questions of fact and law common to all members of each class.

23.     On information and belief, Plaintiff has suffered harm from the unlawful practices alleged herein, and her claims are typical of the claims of individuals in the proposed classes.

24.     Plaintiff and her counsel will fairly and adequately represent the interests of the class. Plaintiff has no known conflicts of interest with other class members. The attorneys representing Plaintiff have litigated and successfully resolved numerous class action cases involving employment claims.

7

25.     The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

26.     A class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery, briefing of legal issues, and court proceedings.

## Count I
## Criminal History Discrimination in Violation of M.G.L. c. 151B

27.     Plaintiff incorporates the above paragraphs.

28.     Morgan Stanley violated M.G.L. c. 151B, § 4(9) by (a) requesting applicants to provide information about protected criminal history, (b) making or keeping records of such information, and (c) using a form of application which requested such information. As a result of those violations, Plaintiff and class members suffered harm.

29.     Morgan Stanley is liable for damages for all lost wages and benefits, damages for emotional distress, punitive damages, and damages for all other losses to which Plaintiff and members of the class are entitled, as well as interest and attorneys' fees and costs.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1.     Certification of a class that include all individuals who applied for employment in Massachusetts at Morgan Stanley during the relevant limitations period and who were subjected to unlawful inquiries or actions regarding protected criminal history information, or such other classes or sub-classes as the Court deems appropriate, pursuant to Mass. R. Civ. P. 23;

2.     An injunction enjoining Morgan Stanley from making unlawful inquiries about the protected criminal history information of employment applicants, from keeping records of such information, or from using

application forms requesting such information, or such other terms as the Court deems appropriate;

3.  An award of all damages recoverable under Massachusetts law;

4.  Attorneys' fees, costs, and interest; and

5.  Any other relief to which Plaintiff and members of the class may be entitled.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE

JANE DOE, on behalf of herself and all others similarly situated,

By her attorneys,

/s/ Stephen S. Churchill
Stephen S. Churchill (BBO#564158)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-6230
steve@fairworklaw.com

Dated: December 14, 2023

# EXHIBIT B

| DOCKET NUMBER | Trial Court of Massachusetts |
|---|---|
| **CIVIL ACTION COVER SHEET** | **The Superior Court** |

| COUNTY | Suffolk County |
|---|---|

| Plaintiff | Jane Doe | Defendant | Morgan Stanley & Co., LLC |
|---|---|---|---|
| ADDRESS: | | ADDRESS: | |

| Plaintiff Attorney: | Stephen Churchill | Defendant Attorney: | |
|---|---|---|---|
| ADDRESS: | Fair Work, P.C., 192 South St, Ste 450, Boston, MA 02111 | ADDRESS: | |
| BBO: | 564158 | BBO: | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES   ☐ NO |

**\*If "Other" please describe:** _____

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☐ YES   ☒ NO | ☒ YES   ☐ NO |

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

### TORT CLAIMS

A. Documented medical expenses to date

    1. Total hospital expenses

    2. Total doctor expenses

    3. Total chiropractic expenses

    4. Total physical therapy expenses

    5. Total other expenses (describe below)

                                                       Subtotal (1-5):      $0.00

B. Documented lost wages and compensation to date

C. Documented property damages to date

D. Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages

F. Other documented items of damages (describe below)    $50,000.00

Class damages available under M.G.L. c. 151B, the amount of which is currently unknown but at least $50,000

                              TOTAL (A-F):    $50,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

Class damages available under M.G.L. c. 151B, the amount of which is currently unknown.

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| Signature of Attorney/Self-Represented Plaintiff: X  Stephen Churchill | Date: | December 14, 2023 |
|---|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

None

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X  Stephen Churchill | Date: | December 14, 2023 |
|---|---|---|

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality †*

AA1 Contract Action involving Commonwealth,
Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth,
Municipality, MBTA, etc. (A)
AC1 Real Property Action involving
Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
Municipality, MBTA, etc. (A)
AE1 Administrative Action involving
Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal
Affairs of Entities (A)
BA3 Liability of Shareholders, Directors,
Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of
Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade
Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade
Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

* See Superior Court Standing Order 1-88 for an
explanation of the tracking deadlines for each track
designation: F, A, and X. On this page, the track
designation for each case type is noted in
parentheses.

†* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

‡ Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

### PA Civil Actions Involving Incarcerated Party ‡

PA1 Contract Action involving an
Incarcerated Party (A)
PB1 Tortious Action involving an
Incarcerated Party (A)
PC1 Real Property Action involving an
Incarcerated Party (F)
PD1 Equity Action involving an
Incarcerated Party (F)
PE1 Administrative Action involving an
Incarcerated Party (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal
Injury/Property Damage (F)
B04 Other Negligence - Personal
Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

### RP Summary Process (Real Property)

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/
Non-residential (F)

### RP Real Property

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10, § 28 (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E(X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency,
G.L. c. 30A (X)
E03 Certiorari Action, G.L. c. 249, § 4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9 (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8 (A)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149,
§§ 29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12, § 11H (A)
E24 Appeal from District Court
Commitment, G.L. c.123, § 9(b) (X)
E94 Forfeiture, G.L. c. 265, § 56 (X)
E95 Forfeiture, G.L. c. 94C, § 47 (F)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only,
G.L. c. 231, § 60B (F)
Z02 Appeal Bond Denial (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12 (X)
E14 SDP Petition, G.L. c. 123A, § 9(b) (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S(X)

### TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF —** On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT —** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.

# EXHIBIT C

perior Court - Suffolk
:cket Number

ER

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, ss.                                             Civil Action No.

| | |
|---|---|
| JANE DOE, on behalf of | ) |
| herself and all others similarly situated, | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| MORGAN STANLEY & CO., LLC, | ) |
| | ) |
|       Defendant | ) |

**PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM**

This action is brought by a former employment applicant against Morgan Stanley & Co.,

LLC ("Morgan Stanley"). Plaintiff brings this claim on behalf of herself and all others similarly

situated, alleging that Morgan Stanley's hiring practices violate Massachusetts law. More

specifically, Morgan Stanley's hiring practices violate chapter 151B by requesting applicants to

disclose information about protected criminal history information, by keeping records of such

information, and by using application forms that request such information. Plaintiff respectfully

requests that she be permitted to proceed under a pseudonym in order to avoid disclosure of her

protected criminal history information and to ensure that others are not deterred when bringing

similar actions intended to protect their rights under Massachusetts law.

**Background**

In or around March 2022, Plaintiff applied to work at Morgan Stanley as a Senior

Registered Service Associate in Boston. (Complaint ¶ 4). She completed an online application, as

well as a questionnaire for a pre-hire review by Morgan Stanley's Compliance Department. (*Id.*).

On or about May 25, 2022, after the pre-hire review by Morgan Stanley's Compliance Department was completed, she was offered the position, which she accepted. (*Id.* ¶ 5).

Subsequently, Plaintiff was required by Morgan Stanley to disclose criminal history information that is protected under section 4(9) of M.G.L. c. 151B. (*Id.* ¶¶ 6-11). That provision makes it unlawful for an employer, among other things, to require an applicant or employee to disclose certain types of criminal history information, including "an arrest, detention, or disposition regarding any violation in which no conviction resulted." M.G.L. c. 151B, § 4(9). Plaintiff has had such arrests, and Morgan Stanley unlawfully required her to disclose information about them. (Complaint ¶¶ 10-11). Ultimately, Morgan Stanley rescinded Plaintiff's job offer because of the criminal history information she was required to disclose, including protected criminal history information. (*Id.* ¶ 12).

**Argument**

A plaintiff may proceed with a pseudonym when she can show that she "has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Singer v. Rosenkranz,* 453 Mass. 1012, 1013 (2009), *quoting Doe v. Bell Atl. Business Sys. Servs., Inc.,* 162 F.R.D. 418, 420 (D. Mass. 1995). In *Doe*, the court noted that "there is a presumption in favor of disclosure," but that "a party may rebut the presumption by showing that a need for confidentiality exists," and "the court must balance the need for confidentiality against the public interest in disclosure." 162 F.R.D. at 420 (citation omitted). The court observed that plaintiffs had been permitted to proceed anonymously "in cases involving social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Id.*

### 1. Plaintiff has a substantial privacy right.

The Massachusetts Legislature repeatedly has recognized that individuals have substantial privacy rights regarding criminal history information in the employment context. When first enacting section 4(9), the Legislature's recognition of those privacy rights is manifest in provisions restricting employers from asking about certain types of criminal history information. Those provisions were revised to provide even stronger protections in 2010 through passage of a so-called "Ban the Box" bill, which precluded employers from seeking disclosure of *any* criminal history information prior to the interview stage of the hiring process, subject to certain exceptions. *See* MCAD Fact Sheet, Criminal Offender Record Information Administrative Procedure Reforms (Nov. 2010) (Ex. 1); Ch. 256 of the Acts of 2010, *codified at* G.L. c. 151B, § 4(9½). In 2018, the Legislature added even stronger safeguards by further expanding the scope of protected criminal history information. *See* Ch. 69 of the Acts of 2018 §§ 103-104, *codified at* G.L. c. 151B, § 4(9).[1]

Like most workplace protections, chapter 151B is not self-enforcing. Its effectiveness depends on plaintiffs being willing and able to assert their rights in a judicial forum. As a result, the SJC has recognized the important role of private enforcement. For example, in the context of the wage laws, the Court recognized the important role of procedural devices, such as class actions, that ensure meaningful enforcement, noting that "very legitimate policy rationales underl[ie] the Legislature's decision to provide for" such devices. *Machado v. System4 LLC*, 465 Mass. 508, 514-15 (2013). Those rationales include the deterrent effect of enforcement actions and "unique to the employment context, the desire to allow one or more courageous employees

---

[1] Specially, the look-back period for certain types of protected information was shortened from five years to three years, and sealed or expunged records were added to the list of protected information. *Id.*

the ability to bring claims on behalf of other employees who are too intimidated by the threat of retaliation and termination to exercise their rights...." *Id.* at 515 n.12, *citing Salvas v. Wal-Mart Stores, Inc.*, 452 Mass. 337, 369 (2008).

An employee's right to maintain the confidentiality of protected criminal history information would be severely compromised, or lost altogether, if the only way they could remedy a violation would be to create a public record associating their name with protected criminal history. Requiring such a public disclosure would create an obvious and substantial obstacle to enforcement, undermining the effectiveness of the law. Omitting the details of Plaintiff's protected criminal history is no answer, and could result in even greater harm, because she would still be tainted through her public identification as a person with a criminal history. Indeed, omitting the details of that history could be even worse, because members of the public – and, critically here, potential future employers – might imagine her history to be worse than it is, through flights of imagination.

Here, the importance of effective enforcement is heightened in light of the racially disproportionate impact of criminal history information. It is well documented that communities of color, including Black communities, are arrested and convicted at rates significantly higher than the white population. For example, as noted in the U.S. Equal Employment Opportunity Commission's *Enforcement Guidance on the Consideration of Arrest and Conviction Records In Employment Decisions Under Title VII of the Civil Rights Act of 1964* (Apr. 25, 2012) ("*Guidance*"),

> Arrest and incarceration rates are particularly high for African American and Hispanic men. African Americans and Hispanics are arrested at a rate that is 2 to 3 times their proportion of the general population. Assuming that current incarceration rates remain unchanged, about 1 in 17 White men are expected to serve time in prison during their lifetime; by contrast, this rate climbs to 1 in 6 for Hispanic men; and to 1 in 3 for African American men.

4

*Guidance* § II and nn. 10-14.

To put those numbers differently, for every 100 White men, about 6 are expected to serve time in prison, but for every 100 Black men, about 33 are expected to serve time in prison. As a result, Black men are over five times more likely to serve time. As the *Guidance* further notes, it is not just convictions that disproportionately affect Black people, but arrests as well.

> Nationally, African Americans and Hispanics are arrested in numbers disproportionate to their representation in the general population. In 2010, 28% of all arrests were of African Americans, even though African Americans only comprised approximately 14% of the general population. In 2008, Hispanics were arrested for federal drug charges at a rate of approximately three times their proportion of the general population. Moreover, African Americans and Hispanics were more likely than Whites to be arrested, convicted, or sentenced for drug offenses even though their rate of drug use is similar to the rate of drug use for Whites.

*Id.* § V.A.2. and nn. 65-68.

As a result, Black employees bear a disproportionate burden when it comes to protected criminal history information, such as arrests that do not lead to convictions. That burden would be exacerbated if the only way to challenge any violations of section 4(9) was to file a lawsuit identifying the plaintiff by name and establishing that she had protected criminal history.

### 2. The disclosure of Plaintiff's name would create the very harm she is seeking to remedy.

Plaintiffs have been permitted to proceed anonymously, among other times, "where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Doe*, 162 F.R.D. at 420. The injury that Plaintiff is litigating against is the forced disclosure of her protected criminal history. Disclosure of her identity would convert what is, as of now, the forced disclosure of her protected criminal history *only to Morgan Stanley* into the forced disclosure of her protected criminal history *to the public at large*, including future prospective employers. It would, in other words, exacerbate the harm she is seeking to remedy.

In other cases, courts repeatedly have recognized that potential harm to a plaintiff's reputation, including the impact on potential employment, warrants the use of a pseudonym. *See, e.g., Doe v. Trustees of Dartmouth Coll.,* 2018 WL 2048385, at *5 (D.N.H. May 2, 2018) ("More significant in this case is plaintiff's argument that public disclosure will subject him to reputational damage and will impair his future educational and career prospects, regardless of the actual outcome of this action."); *Doe v. Purdue Univ.,* 2017 WL 2350290, at (N.D. Ind. May 31, 2017) ("If Plaintiff's identify is revealed, Plaintiff would suffer the very harm to his reputation that he seeks to remedy by bringing this lawsuit"); *Doe v. Cabrera,* 307 F.R.D. 1, 6-7 (D.D.C. 2014) ("[C]ompelling the plaintiff to identify her name on every court filing would make the plaintiffs name indefinitely available to the public. Having the plaintiffs name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary [harm], as a result of bringing this case.") (internal citation omitted).

### 3. There is no compelling public interest in the disclosure of Plaintiff's name.

Aside from the general interest in having the names of parties remain publicly available, there is no reason why disclosure of the Plaintiff's name is in the public interest. One factor that supports her position is that she is challenging private action, not governmental action. *See, e.g., Sealed Plaintiff v. Sealed Defendant #1,* 537 F.3d 185, 190 (2d Cir. 2008) (noting relevance of "whether the suit is challenging the actions of the government or that of private parties"); *M.M. v. Zavaras,* 139 F.3d 798, 803 (10th Cir. 1998) ("Plaintiff's claim to relief clearly involves the use of public funds, and the public certainly has a valid interest in knowing how state revenues are spent."); *Doe v. Greiner,* 662 F. Supp. 2d 355, 361 (S.D.N.Y. 2009) ("Plaintiff challenges the actions of the prosecutor and the state court system, as well as the performance of his appointed

6

counsel. There is a strong interest in airing and resolving these issues in public proceedings...."). Here, the Plaintiff is challenging the actions of Morgan Stanley, not any governmental actor.

### 4. Morgan Stanley has no compelling interest in the public disclosure of Plaintiff's name.

Courts also have considered "whether [and how] the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously." *Sealed Plaintiff*, 537 F.3d at 190. Morgan Stanley will not be limited in its defense of this action through Plaintiff's use of a pseudonym. Morgan Stanley knows the Plaintiff's identity. It will be able to conduct the same scope of relevant discovery, and it will be able to make all of the same legal arguments, so it will not suffer any harm through the use of a pseudonym. *See Cabrera*, 307 F.R.D. at 8 ("Courts generally find little to no risk of unfairness to an accused defendant...where discovery does not appear to be inhibited by the plaintiff's desire to proceed anonymously."); *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) ("[D]efendant has not identified any prejudice to its ability to conduct discovery or try the matter if [the] plaintiff were to proceed under a pseudonym.").

### 5. Plaintiff's pursuit of a class action further warrants her request.

Another consideration favoring Plaintiff's request is her proposed remedy. She is not bringing the case only on her own behalf, but on behalf of others similarly situated, so her individual identify is of diminished importance. *See, e.g., Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) (where lawsuit "seeks to raise an abstract question of law that affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process"). The common and "abstract question of law" in this case is whether Morgan Stanley's hiring process, including its process for asking about criminal history information, violates Massachusetts law. That question

perior Court - Suffolk
icket Number

does not turn on Plaintiff's identity. In addition to her claim for any damages resulting from Morgan Stanley's discrimination, Plaintiff is seeking an injunction to enjoin Morgan Stanley from continuing to violate chapter 151B.

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that she be permitted to proceed under a pseudonym.

> JANE DOE, on behalf of herself and all others similarly situated,
>
> By her attorneys,
>
> /s/ Stephen S. Churchill
> Stephen S. Churchill (BBO#564158)
> FAIR WORK, P.C.
> 192 South Street, Suite 450
> Boston, MA 02111
> (617) 607-6230
> steve@fairworklaw.com

Dated: November 20, 2023

8

## CERTIFICATE REGARDING SERVICE AND CONSULATION

I certify that this motion is being filed with the underlying Complaint in order to request leave to proceed through a pseudonym. Because the Complaint has not yet been filed and served on the Defendant, the motion has not yet been served on the Defendant, and Plaintiff has not yet consulted with Defendant. A copy of this motion will be served on the Defendant together with the Summons and Complaint.

Dated: December 14, 2023                    /s/ Stephen Churchill
                                            Stephen Churchill

9

# EXHIBIT 1



# MCAD Fact Sheet
# Criminal Offender Record
# Information Administrative
# Procedure Reforms
### November 2010

On August 6, 2010, Governor Deval Patrick signed into law Chapter 256 of the Acts of 2010, "An Act Reforming the Administrative Procedures Relative to Criminal Offender Record Information and Pre- and Post-Trial Supervised Release" ("CORI Reform").  Effective November 4, 2010, the Act prevents employers from seeking disclosure of job applicants' criminal record information prior to the interview stage of the hiring process.[1]  This law is subject to two limited exceptions discussed below.  The law, codified at G.L. c. 151B, § 4(9½) (www.malegislature.gov/Laws/SessionLaws/Acts/2010/Chapter256), is enforced by the Massachusetts Commission Against Discrimination (MCAD).

In addition to this new subsection, the MCAD will continue to retain enforcement authority over the existing Massachusetts Criminal Records Statute, G.L. c. 151B, § 4(9), which prohibits employers from asking prospective or current employees to furnish certain criminal information on a written application or in response to an oral inquiry. Moreover, Section 4(9) prohibits an employer from taking an adverse employment action against an applicant or employee because of criminal history information the employer obtained unlawfully (www.malegislature.gov/ Laws/GeneralLaws/PartI/TitleXXI/Chapter151B/Section4).

***

Under the newly revised criminal offender record laws, an employer may not:

Prior to the interview, ask a job applicant to provide any information about his/her criminal history on a written application unless the employer or the position falls within a statutory exception.  G.L. c. 151B, § 4(9½).

Prior to the interview, ask an applicant whether he or she has been convicted of a felony or a misdemeanor on a written application, unless the employer or the position falls within a statutory exception.  G.L. c. 151B, § 4(9½).[2]

Ask an applicant to obtain a copy of his or her CORI record for the employer. G.L. c. 6, § 172;[3]

---

[1] This Fact Sheet applies only to those sections of the CORI Reform law that go into effect on November 4, 2010 and are enforced by the MCAD.

[2] This is a departure from existing law that allowed an employer to ask about felony and certain misdemeanor convictions.

Ask an applicant or current employee, in writing or orally, about a prior arrest, detention, or disposition that did not result in a conviction. G.L. c. 151B, § 4(9);

Ask an applicant or current employee, in writing or orally, about a prior first conviction for any of the following misdemeanors: drunkenness, simple assault, speeding, minor traffic violations, affray, or disturbance of the peace. G.L. c. 151B, § 4(9);

Ask an applicant or current employee, in writing or orally, about a conviction of a misdemeanor where the date of the conviction predates the inquiry by more than 5 years. G.L. c. 151B, § 4(9);

Ask an applicant or current employee, in writing or orally, about sealed records or juvenile offenses.[4]

## **Frequently Asked Questions**

Q1.     ***What employers are affected by the CORI laws?***

A1.     Employers who employ six or more persons are subject to the provisions of G.L. c. 151B.  Public employers are included regardless of the number of people employed.

Q2.     ***Does this law apply to temporary employment agencies?***

A2.     If the employer and the temporary employment agency are found to be "joint employers," the temporary employment agency as well as the  employer are subject to the provisions of G.L. c. 151B, §§ 4(9), (9½).  See Burlamachi v.  Dupont Merck, 22 MDLR 35, 39 (2000), aff'd, 24 MDLR 9 (2002); Angela Stanley v. The Gillette Co., 2 MDLR 1203 (1980).

Q3.     ***When an employer uses workers placed by a temporary agency, who are later converted to regular full-time positions with the employer, will an employment application provided by the employer upon the conversion to regular full-time status be considered an "initial" written application?***

A3.     The temporary employee is "applying" for permanent placement with the employer. Therefore, all written applications for that employment must be in compliance with G.L. c. 151B, §§ 4(9), 4(9½).

---

[3] This law is enforced by the Criminal History Systems Board (CHSB), which could sanction employers for any violations.  G.L. c. 6, §168.  However, a violation of G.L. c. 6, §168, could be used as evidence in a case involving a violation of G.L. c. 151B, §§4(9) or (9 ½).

[4] MCAD and Hanson v.  Mass. Dep't of Social Services, 28 MDLR 42, 43 (2006) (Full Commission decision affirming that juvenile offenses fall within the scope of G.L. c. 151B, § 4(9)).

Q4. *Are the prohibitions set forth in G.L. c. 151B, §§ 4(9) and 4(9½) applicable to in-state employers only?*

A4. Any employer that does business in Massachusetts and takes applications in Massachusetts is subject to G.L. c. 151B, §§ 4(9), 4(9½). The Commission will consider other scenarios on a case-by-case basis.

Q5. *Can a national or international employer use a standard application with a disclaimer for Massachusetts applicants?*

A5. National and international employers may use standard application forms if the form contains explicit instructions that the employer is prohibited from obtaining criminal history information from the employee (unless one of the exceptions set forth in G.L. c. 151B, § 4(9½) applies) and the employer properly disclaims. The employer's disclaimer must be clear and unambiguous, in boldface type and placed and printed to attract the reader's attention. For example:

## MASSACHUSETTS APPLICANTS ONLY:

**Under Massachusetts law, an employer is prohibited from making written, pre-employment inquiries of an applicant about his or her criminal history. MASSACHUSETTS APPLICANTS SHOULD NOT RESPOND TO ANY OF THE QUESTIONS SEEKING CRIMINAL RECORD INFORMATION.**

Q6. *May an employer inquire orally about the applicant's criminal history during the interview?*

A6. This depends on the specific information the employer seeks from the applicant. G.L. c. 151B, § 4(9½) prohibits employers from seeking criminal history information by written application, and therefore does not apply. G.L. c. 151B, § 4(9), however, restricts employers from making certain written and oral inquiries directly to an applicant **or** employee. Specifically, G.L. c. 151B, § 4(9) prohibits employers from asking orally or in writing about:

> An arrest that did not result in a conviction;
> A criminal detention or disposition that did not result in a conviction;
> A first conviction for any of the following misdemeanors: drunkenness, simple assault, speeding, minor traffic violations, affray, or disturbance of the peace;
> A conviction for a misdemeanor where the date of the conviction predates the inquiry by more than 5 years; and
> Sealed records and juvenile offenses.

During an interview or thereafter, an employer can ask about convictions so long as *the employer does not ask about any offenses set forth in G.L. c. 151B, § 4(9).* (See above).

Q7.     *Are any employers excepted from compliance with G.L. c. 151B, § 4(9½)?*

A7.     There are two exceptions to the blanket prohibition against asking an applicant or
employee for criminal history information on a written application. An employer may
ask about criminal convictions if:

1. The applicant is applying for a position where federal or state law or regulation
creates a mandatory or presumptive disqualification based on a conviction for 1 or
more types of criminal offenses, or
2. The employer or an affiliate is subject by federal or state law or regulation not to
employ persons in 1 or more positions who have been convicted of 1 or more types
of criminal offenses.

A "regulation" will only create a mandatory or presumptive disqualification if it was
promulgated in accordance with G.L. c. 30A, for state regulations, and 5 U.S.C. §§ 551
et seq., for federal regulations. The Commission considers an employer to be
mandatorily disqualified if a properly promulgated statute or regulation specifically
bars the employer from hiring an applicant with a particular criminal conviction. For
example, if a properly promulgated regulation specifically prohibits an employer from
hiring an employee convicted of a felony, the employer falls into the first exception,
and may make a pre-interview inquiry in writing about a felony conviction. By way of
further example, the Executive Offices of Health and Human Services' ("EOHHS")
CORI regulations, 101 CMR 15.00 et seq., do not create mandatory or presumptive
disqualifications. While the EOHHS Secretary or agency Commissioner or their
designees have five days to disapprove a hiring authority's decision to hire a candidate
who has been convicted of or has any pending Table A crimes, there is no mandatory
or presumptive disqualification. See 101 CMR 15.09(3)(a).

The second exception would apply, for example, to banks, their parents and
subsidiaries, which are required by federal law to make inquiries about whether a job
applicant has been convicted of a crime that involves dishonesty, breach of trust or
money laundering. 12 U.S.C. §1829. Covered institutions are exempted from G.L. c.
151B, § 4(9½) for inquiring about these types of criminal offenses.

The MCAD will assess each fact pattern on a case-by-case basis. It is advisable to seek
legal counsel as to whether a specific employer falls into one of the two exceptions, or to
contact the applicable governmental entity that enforces the statute or regulation.

Q8.     *What kinds of pre-employment forms fall within the scope of G.L. c. 151B, § 4(9½)?*

A8.     Consistent with the legislative intent behind CORI Reform[5], the MCAD will presume
that a written application or form requesting criminal background information prior to
an interview is part of the "initial written application."

---

[5] In promulgating this law, the Massachusetts Legislature intended to give prospective employees the opportunity to
meet employers before disclosing their criminal histories, thereby reducing barriers to employment applicants with a
criminal history face. See Summary of Conference Committee Final Report, S. 220 and H. 4712 (July 30, 2010).

Q9.   *How does the new law, G.L. c. 151B, § 4(9½), affect an applicant with disability whose disability renders him or her unable to complete a written application?*

A9.   Where an applicant self-identifies as disabled and seeks a modification to the application process such that the application will be completed orally rather than in writing, employers should refrain from seeking criminal background information until the time of the interview.  Unless the employer falls into one of the two statutory exceptions, the MCAD will consider any inquiry (including an oral one) prior to the interview that seeks prohibited criminal record information in the modified or adjusted application process to be in violation of G.L. c. 151B, § 4(9½) and/or G.L. c. 151B, § 4(16).

Q10.   *Will the Commission consider cases based on the theory that consideration of criminal records disparately impacts a particular protected class?*

A10.   In appropriate cases, the Commission may review whether the use and consideration of criminal records as a criterion for hiring has a discriminatory impact on a particular protected class.

Q11.   *How do G.L. c. 151B, §§ 4(9) and 4(9½) affect employers who participate in the Work Opportunity Tax Credit (WOTC) program?*

A11.   In appropriate cases, the MCAD may decline to authorize an investigation against a valid participant of the WOTC program.  If an employer is a participant in the WOTC program and is named in a criminal offender records claim, the employer should provide the MCAD with a copy of the employer's IRS Form 8850 ("Pre-Screening Notice and Certification Requirement for the Work Opportunity Credit").

# EXHIBIT D



## PROCESS SERVER DELIVERY DETAILS

**Date:**                                 Mon, Jan 29, 2024
**Server Name:**                          Drop Service

| Entity Served | MORGAN STANLEY & CO. LLC |
|---------------|--------------------------|
| Case Number   | 2384CV02850              |
| Jurisdiction  | MA                       |

| Inserts | | |
|---|---|---|
| | | |



| Summons | CIVIL DOCKET NO.<br>2384-CV-02850 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br><br>Jane Doe, et al. Plaintiff(s)<br>vs.<br>Morgan Stanley & Co., LLC<br><br>Defendant(s) | **John E. Powers, III,** Acting<br>Clerk of Courts<br>Suffolk **Superior Civil,** County<br>COURT NAME & ADDRESS:<br>**Three Pemberton Square**<br>**Boston, MA. 02108** |
|---|---|

THIS SUMMONS IS DIRECTED TO  <u>Morgan Stanley & Co., LLC</u> (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the  Suffolk Superior   Court.
**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business,  Suffolk Superior Court  3 Pemberton Square, Boston, MA  (address), by mail, in person, or electronically through 02108   the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address:
Fair Work, P.C.
192 South Street, Suite 450
Boston, MA 02111
**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

A true copy Attest:
1-29-24   Deputy Sheriff Suffolk County

3. **(cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure**. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings.

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon.  Heidi E. Brieger , Chief Justice on  January 23 , 2024 . (Seal)

Acting Clerk

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date:

rev. 7/2022

# EXHIBIT E

1/4/23, 9:08 AM                                        Candidate View

1585 Broadway
New York, NY 10036



May 25, 2022

██████████████████

Dear ████

We all enjoyed getting to know you and are excited to offer you a position as a Senior Registered Service Associate at Morgan Stanley in the Wealth Management Field Division in the 28 State Street, Boston, MA office. Your employment is expected to begin after completing all required onboarding actions (your "Start Date").

The offer includes an hourly rate of $40.87. Your role is eligible for overtime pay.

Further details of your compensation are outlined on the proceeding pages.

As an employee of Morgan Stanley you will be eligible for a competitive package of employee benefits including: medical, dental, vision, life, and disability insurance and 401(k). Additionally, you will receive 10 days of vacation per year pro-rated from your Start Date.

Please take the time to review the terms of our formal offer, which are outlined in detail on the following pages and include important details about your compensation, benefits and the terms and conditions of your anticipated employment with Morgan Stanley.

Please confirm your acceptance of this offer, including the proceeding detailed terms and conditions, by providing your electronic signature. Please print and retain a copy of this letter for your reference.

Your "Start Date" will be determined upon completion of the onboarding process. You will receive further communication from us with details of where to go and what to bring on your first day of work.

Please call Hugo Rodrigues at (617) 478-6447 if you have any questions or would like to discuss your offer in more detail. We would be thrilled for you to continue your career with Morgan Stanley!

Sincerely,

Rob Hampton
Managing Director, Human Resources

**Terms & Conditions of Employment**

**Annual Compensation**

As an hourly employee, as of your Start Date, for 2022, you will be compensated at an hourly rate of $40.87, paid in semi-monthly installments (generally on the 15th and the last day of the month, or the nearest weekday preceding these days if they fall on a weekend or bank holiday). It is expected that you will work 40 hours per week, which would amount to approximately $85000.

In the event that you work in excess of 40 hours in a workweek, you will receive overtime pay for all time worked in excess of 40 hours in a workweek. Your overtime rate of pay is calculated by multiplying your hourly rate of pay by one-and-a-half. In accordance with applicable state law, there may also be additional circumstances under which you might receive overtime pay.

### Benefits

Most of Morgan Stanley's US employees who work at least 20 hours per week are eligible for our standard package of employee benefits, including 401(k), medical, disability and others. If you are eligible, you will receive information from Morgan Stanley's Benefit Center shortly after your Start Date. If you have questions about what benefits Morgan Stanley offers, please call HR Services at 1-877-674-7411 or visit our website at mybenefits.morganstanley.com/new-hires. Nothing in this letter is a guarantee of any particular benefits for any period of time; Morgan Stanley may amend or terminate its benefits at any time.

### Vacation

In accordance with Firm policy, for 2022, you will be eligible for 10 days of vacation, pro-rated from your Start Date.

### Tax Related Provision

All payments provided for in this letter are subject to applicable withholdings and deductions.

### At-Will Employment

All employment with Morgan Stanley is at-will which means that nothing in this letter should be construed as a guarantee of employment for any period of time, and that you or the Firm may terminate your employment for any reason, with or without cause, at any time.

### COVID-19 Policy

Morgan Stanley maintains office locations that require full vaccination against Covid-19 and other locations which require employees to be fully vaccinated or regularly test negative. As a condition of employment, you will need to attest to your vaccination status, upload proof of vaccination within 3 days of your start date where applicable and otherwise comply with the requirements of your Morgan Stanley worksite. If you are not fully vaccinated and your office location requires vaccination, any offer of employment will be rescinded unless otherwise required by law.

### Background Clearance and New Hire Paperwork

Morgan Stanley is required to perform due diligence to ensure that individuals are not disqualified from employment with the Firm because of certain criminal, civil, or regulatory events. As a result, you will be required to undergo fingerprinting and your fingerprints will be used to check your criminal history records, including records maintained by the Federal Bureau of Investigation. In addition, it is important that you complete the required onboarding tasks assigned to you, including completion of any background check forms, immediately in order to avoid delay of your onboarding. Failure to complete these tasks and/or receive background clearance will result in a delay to your Start Date. To the extent that you may be disqualified from employment or the results of the background check, including the fingerprint check, are unsatisfactory, you understand and agree that this offer is null and void and your employment will be terminated.

### U.S. Work Authorization

Pursuant to federal law, you are required to complete the Form I-9 and provide proof of your identity and eligibility to work in the United States. Fieldprint (reportdelivery@bigreport.com) will send an email providing instructions on how to complete Section 1 of the Form I-9, which must be completed no later than the close of business of your Start Date. In addition, in order to complete Section 2 of the Form I-9, you are required to present original documentation evidencing your identity and work authorization in person at a Fieldprint location. Failure to provide the required documentation may delay your Start Date or result in the termination of your employment.

### Licensing & Registration

Your employment is contingent on your obtaining and retaining all licenses and registrations as Morgan Stanley determines necessary for your position. Any such licenses and registrations that you do not have are required to be obtained as soon as practicable, and no later than the time period outlined for your division in the attached addendum. You understand and agree not to engage in any activities that have a licensing/registration requirement unless you have obtained such licensing/registration.

### Outside Business Activities & Personal Trading Accounts

As of your Start Date and consistent with local law, you will be required to disclose any outside business activities, private investments, and any and all information concerning any outside brokerage/securities accounts over which you could be expected to exercise influence or control (such as a brokerage account for your spouse or domestic partner or a brokerage account on behalf of your or your spouse's or domestic partner's dependent child) so that the Firm may assess whether there

are any real or potential conflicts of interest associated with any such external activities or accounts. Outside business activities include, but are not limited to, being an employee, independent contractor, sole proprietor, officer, or partner of any other organization or company. You hereby authorize Morgan Stanley, if it requests, to receive an electronic feed or obtain duplicate confirmations and monthly brokerage statements and, if Morgan Stanley requests, will help it to receive such information directly from the broker-dealer. In addition, you understand and agree that, as a condition of employment and as permitted by law (absent a written waiver granted by the Compliance Department), should Morgan Stanley decide in its sole discretion that these outside brokerage/securities accounts must be maintained here, you will transfer any outside brokerage/securities accounts to Morgan Stanley or E*Trade.

### New Hire Training and Firm Policies

You understand and agree that you are required to promptly complete all mandatory online new hire training requirements including the electronic acknowledgement of the Firm's Code of Conduct. You further agree to review and comply with all applicable Firm policies and procedures.

### Prior Employment

You understand and agree that you may not bring onto Firm premises any confidential information, whether documents or other tangible forms, relating to your prior employers' business. Your electronic signature confirms that you are not subject to any contractual or other restrictions/obligations that are inconsistent with your accepting this offer of employment and performing your duties on behalf of Morgan Stanley.

### Arbitration Agreement

As part of accepting this offer of employment, you agree to the terms and conditions of the Firm's Arbitration Agreement, which is attached, unless you opt out of the Arbitration Agreement by submitting the New Hire CARE Arbitration Program Opt Out Form within 30 days of your Start Date. To obtain the form once you are employed by the Firm, type "newhirecareoptout" in your internet browser and then click the "Download" button at the bottom of the webpage that displays. If you accept this offer and do not timely submit an opt out form, you will be deemed to have agreed to the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook as of the date of your acceptance of this offer. The Arbitration Agreement provides, among other things, that you agree to have all Covered Claims (as defined in the Agreement) resolved by final and binding Arbitration on an individual basis (i.e., non-class action, non-collective action and non-representative action).

### Integration Clause

This letter, any annexes (if applicable), and any addenda/attachments as referenced in this letter constitute the entire understanding and contain a complete statement of all agreements between you and Morgan Stanley and supersede all prior or contemporaneous verbal or written agreements, understandings or communications. You acknowledge that you have not relied on any assurance or representation not expressly stated in this letter.

# EXHIBIT F

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, S.S.                                        SUPERIOR COURT DEPT.
                                                     OF THE TRIAL COURT

---

JANE DOE, on behalf of herself and all
others similarly situated,

        Plaintiff

v.                                                   Civil Action No. 2384CV02850

MORGAN STANLEY & CO., LLC,

        Defendant

---

## NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that this case, styled as *Jane Doe v. Morgan Stanley & Co., LLC*, C.A. No. 2384CV02850 which was previously pending in this, Massachusetts Trial Court Division, Suffolk Superior Court, has been removed to the United States District Court for the District of Massachusetts, by Defendant Morgan Stanley & Co., LLC, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  A copy of the Notice of Removal, filed with the United States District Court for the District of Massachusetts, is attached hereto as <u>Exhibit A</u>.

PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446(d), this Court shall proceed no further unless and until the case is remanded.

Dated: February 16, 2024                    Respectfully submitted,

                                             /s/ Justin F. Keith
                                            Justin F. Keith, BBO #667953
                                            justin.keith@gtlaw.com
                                            **GREENBERG TRAURIG**
                                            One International Place, Suite 2000
                                            Boston, Massachusetts 02110
                                            (617) 310-6230 *Telephone*
                                            (617) 310-6001 *Facsimile*

                                            *Attorneys for Morgan Stanley & Co., LLC.*

## <u>CERTIFICATE OF SERVICE</u>

I, Justin F. Keith, Esq., hereby certify that on February 16, 2024, I caused the foregoing

document to be served on all parties by first-class mail and email to the following addresses:

Steven S. Churchill
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
steve@fairworklaw.com

*/s/ Justin F. Keith*
Justin F. Keith

ACTIVE 693637557v1