UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated,<br><br>    Plaintiff<br><br>v.<br><br>MORGAN STANLEY & CO., LLC,<br><br>    Defendant | Civil Action No. 1:24-cv-10391 |

**DEFENDANTS' SUPPLEMENTAL BRIEF ON GOOD v. UBER TECHNOLOGIES, INC.**

    Defendant Morgan Stanley & Co., LLC ("Morgan Stanley" and/or the "Defendant"), by and through its attorneys, Greenberg Traurig, LLP, submit this Supplemental Brief. On June 11, 2024, the Court entered an Order inviting the parties to file supplemental briefs addressing the effect of the Supreme Judicial Court's ("SJC") opinion in *Good v. Uber Technologies, Inc.*, __Mass.__, SJC-13490 (June 7, 2024) (hereinafter "*Good v. Uber*") (attached hereto as **Exhibit A**) on Morgan Stanley's Motion to Compel Arbitration. ECF 16.

    As we discuss below, while *Good v. Uber* does not alter the well-established Massachusetts law that controls this case, the SJC's recent decision further supports the granting of Morgan Stanley's Motion to Compel Arbitration[1].

---

[1] Plaintiff filed a Motion to Proceed Under a Pseudonym on May 3, 2024. ECF 13. Morgan Stanley opposed the Motion on the basis that Plaintiff did not overcome the presumption against the use of pseudonyms, that she waived any ability to proceed under a pseudonym because she has already put her name into the public record, and that arbitration provides the confidential venue she seeks. ECF 14. Because the Court has not ruled on that motion, Morgan Stanley continues to use the pseudonym Jane Doe in this filing.

## Factual Background in *Good v. Uber*

*Good v. Uber* presented a narrow inquiry applying basic principles of contract formation to whether Plaintiff William Good ("Good") was bound to Defendant Uber Technologies, Inc.'s ("Uber") ride share platform terms of use. *Good v. Uber*, at 2. On April 25, 2021, Good used the Uber application to secure a ride. *Id*. at 4. Prior to scheduling the ride, he was presented with a blocking screen notifying him that Uber had changed its terms of use and required him to click a checkbox next to the text indicating that he had "reviewed and agree[d]" to the terms. *Id*. Good also clicked a confirm button at the bottom of the interface. Good could only order a ride after performing these actions. *Id*. After Good again used the platform to secure a ride and was injured, he commenced an action in the Superior Court against Uber and the driver of the vehicle alleging negligence. *Id*. at 4-5; 13. The defendants filed a joint motion to compel arbitration contending that the terms of use bound Good to pursue his claims only through arbitration. *Id*. Good asserted that no contract was formed because Good neither had reasonable notice of Uber's terms of use nor assented to the terms. *Id*., at 13-14. The motion judge agreed with Good and dismissed Defendants' motion. The SJC transferred the case from the Court of Appeals on its own motion to evaluate whether a contract was formed that bound Good to the arbitration provision contained in Uber's terms of use.

## Legal Standard Applied in *Good v. Uber*

The Federal Arbitration Act and the Massachusetts state counterpart, require "courts rigorously to enforce arbitration agreements according to their terms." *Id*. at 16 (internal quotations omitted). A dispute over whether parties have agreed to arbitrate their disputes is governed by state contract law, and an agreement that contains an arbitration provision is analyzed the same way as any other provision of a contract by asking—was there both offer and acceptance? *Id*. at 16-17.

Additionally, to show a nonnegotiable standard form contract like the one contained in Uber's terms of use was formed "there must be both…notice of the terms [of the contractual offer] and a reasonable manifestation of assent to those terms [so as to constitute acceptance of the offer]." *Id*. at 17 (quoting *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 572 (2021)).

1. <u>Reasonable Notice of the Offer</u>

The notice element can be satisfied by either actual notice or reasonable notice. *Id*. at 18. In *Good v. Uber*, the Court found that the reasonable notice standard was met.

Analyzing the totality of the circumstances to determine whether Good had reasonable notice of the terms, the SJC considered, "inter alia, 'the nature, including the size, of the transaction,' 'the interface by which the terms are being communicated,' the form of the contract,' and 'whether the notice conveys the full scope of the terms and conditions.'" *Id*. at 21 (quoting *Archer v. Grubhub, Inc.*, 490 Mass. 352, at 361 (2022)). In weighing the nature and size of the transaction, the Court analyzed the modest cost of a ride and how many times he had presumably purchased a ride to determine that "reasonable people in the position of the parties" might not even had realized that he was entering a contract all. *Id*. at 21.

Of note in this case, later in the opinion the SJC compared Uber's driver terms of use to its rider terms of use, observing that: "Entering a relationship for one's livelihood typically is far more consequential than seeking a ride." *Id*. at 35.

When examining whether the interface and form of contract provided reasonable notice to the consumer, the SJC examined the interface to determine whether it "'reasonably focused' the otherwise unsuspecting user 'on the terms and conditions' being imposed." *Id*. at 23. The first part of the SJC's analysis was to evaluate the clarity and simplicity of the communication of the terms. *Id*. (citing *Kauders*, 486 Mass. at 573). The objective test is whether, "under the totality of the

circumstances, [the] communication would have provided a reasonably prudent [user] notice of the [terms being offered, including the arbitration provision]." *Id.* (citing *Archer*, 490 Mass. at 362). The SJC found that Uber's interface "unequivocally and transparently communicated" that by checking the checkbox and the confirm button, the user was agreeing to Uber's terms of use which were accessible through a hyperlink to the full text of the terms. *Id.* at 24; 29-30. The SJC noted that "Critically, the interface – an 'in-app blocking pop-up screen' – prevented the user from proceeding to order a ride using Uber's services without first interacting with the interface." *Id*. at 31.

The SJC rejected Good's argument that Uber was obligated to provide an interface requiring the user to scroll through the terms of use, noting that this type of technological requirement (the IT equivalent of forcing someone to read a printed contract) went to the actual notice standard, not the reasonable notice standard applied by the Court. *Id*. at 34 ("reasonable notice suffices where the totality of the circumstances provides the reasonably prudent user with information sufficient to understand that terms of use are being offered and makes those terms readily available for the user to access."). The SJC went on to cite multiple authorities for the proposition that clickwrap agreements are regularly enforced, including the First Circuit's decision in *Emmanuel v. Handy Techs, Inc*., which Morgan Stanley discusses at length in its Motion. *Id.* at 35 (citing *Kauders*, 486 Mass. At 574 ["clickwrap agreements 'are regularly enforced'"]; *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 9 (1st Cir. 2021) ["'we are not aware' of 'any precedent ... that would indicate that Massachusetts law imposes ... a requirement' that user scroll through terms of use"]; *Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 147, 152 (D. Mass. 2019) ["courts in this Circuit are in near universal agreement that clickwrap contracts are enforceable"]).

The SJC also found that Uber's notice conveyed the full scope of the terms to Good. The interface required Good to acknowledge that he had reviewed the terms and linked the full terms of use through a hyperlink, making them readily available to the user. *Id*. at 33-34; 39. Noting the "well-established and widely recognized principle that offerees have a duty to read the terms of a contract to which they assent and are not excused from a contract's terms solely by virtue of having chosen not to do so", the Court concluded that Good had reasonable notice of the arbitration agreement contained in Uber's terms of use. *Id*. at 42.

2. <u>Reasonable Manifestation of Assent</u>

The second portion of the SJC's analysis focused on whether Good reasonably assented to Uber's terms of use. Notably, the SJC clearly stated that "Where a user is required to expressly and affirmatively manifest assent to an online agreement by clicking or checking a box that states that the user agrees to the terms and conditions, such 'clickwrap' agreements ... are regularly enforced." *Id.* at 45 (citing "*Kauders*, 486 Mass. at 574; *Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 76 (D. Mass. 2023) ("'clickwrap' agreement[s] ... carry a degree of presumption of validity") (internal citations omitted). Moreover, "[c]licking a box to indicate assent provides an action comparable to the solemnity of physically signing a written contract, by help[ing] alert users to the significance of their actions." *Id.* (citing *Kauders*, 486 Mass. at 574-575). Where users click a box or button acknowledging their assent, they have reasonably manifested their agreement to be bound by the contract. *Id.* The SJC found that, because Good checked the box confirming that he had reviewed and agreed to the terms of use, he assented to those terms. *Id.* at 45-46.

As a result of the above analysis, the SJC found Uber's terms of use and the accompanying arbitration provision enforceable and overturned the trial court's ruling. *Id*. at 51.

### ***Good v. Uber*'s application to this case**

While *Good v. Uber* did not alter the legal principles that control Morgan Stanley's motion to compel, it further underscores why the arbitration provision that Plaintiff agreed to should be enforced. Several key points stand out:

First, the nature and size of the transaction weigh in favor of Morgan Stanley. As the SJC noted in *Good*, "Entering a relationship for one's livelihood typically is far more consequential than seeking a ride." *Id*. at 35. Here, the core of Plaintiff's claims center on her application for employment. This stands in stark contrast to someone seeking a ride home on their phone—something that tens of millions of people do every day.[2] And, unlike a reasonable app user who might hurriedly click through in order to order a ride, no such urgency would face a reasonable applicant for employment or prevent them from reading the terms of their application for a job.

Second, like the contract in *Good v. Uber*, Morgan Stanley's interface presented the contract on a single page, prior to advancing, but in an even more user-friendly format. While the Uber agreement required the user to click a link to another page to access the full terms, Plaintiff would have been able to view the Morgan Stanley agreement by simply scrolling through the terms or clicking a link to view/download a PDF. ECF 8 at 5.

Finally, as Morgan Stanley's Motion to Compel explains, Morgan Stanley uses a clickwrap agreement similar to the one in *Good v. Uber*, and which are almost universally enforced by courts. As Morgan Stanley explained in its Motion and the accompanying Declaration, Jane Doe was presented with a screen showing the "Notice to Applicants and Acknowledgement." ECF 8 at 4. Applicants could scroll through the terms of use, print, or save the notice. *Id*. at 5. Regardless of

---

[2] *See* Uber Technologies, Inc., Form 8-K, Ex. 99.1 (Feb. 7, 2024) ("Trips during the quarter grew 24% YoY to 2.6 billion, or approximately 28 million trips per day on average.") https://www.sec.gov/Archives/edgar/data/1543151/000154315124000008/uber-20240207.htm.

the technology that the applicant used, the full notice text was always visible by scrolling. *Id*. The first line of the notice, on any device, stated that "By submitting your application, you agree…" which would put any reasonable applicant on notice that they were agreeing to be bound by an agreement with Morgan Stanley. *See* Declaration of Jessica Krentzman ("Krentzman Decl."), Ex. 4-6. The notice contained an overview of the arbitration agreement, the right to opt out, and hyperlinks to the arbitration agreement and opt out form. *Id*. Notably, like in *Good v. Uber*, the applicant could not proceed with an application without clicking "I Accept." *See* Krentzman Decl., ¶ 15. While this would be enough to bind Jane Doe under *Good v. Uber*, Morgan Stanley's notice and agreement even goes as far to allow an applicant to opt-out of the arbitration agreement within 30 days. ECF 8 at 5-6. Jane Doe did not opt out.

## Conclusion

For the reasons set forth herein, Morgan Stanley respectfully requests that this Court compel Plaintiff to bring her claims in arbitration before JAMS and stay Plaintiff's Complaint.

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Justin F. Keith*
Justin F. Keith, BBO #667953
justin.keith@gtlaw.com
**GREENBERG TRAURIG**
One International Place, Suite 2000
Boston, Massachusetts 02110
(617) 310-6000 *Telephone*
(617) 310-6001 *Facsimile*

**Attorneys for Morgan Stanley &Co., LLC**

Dated: June 25, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 25th day of June, 2024.

/s/ Justin F. Keith
Justin F. Keith
