**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | )   No. 1:24-cv-10391-JEK |
| v. | ) |
| | ) |
| MORGAN STANLEY & CO., LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS**
**AND PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM**

**KOBICK, J.**

In this putative class action, plaintiff Jane Doe alleges that defendant Morgan Stanley & Co., LLC, violated M.G.L. c. 151B, § 4(9) by requiring her and similarly situated individuals to furnish information about arrests that did not result in criminal convictions when they applied to work for the company. Morgan Stanley moves to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and to dismiss the complaint. It contends that when Doe began her job application, she agreed to submit all claims arising out of the job application and recruitment process to binding arbitration and waived the right to proceed on a class-wide basis in court or before an arbitrator. Doe disputes that she formed such a contract with Morgan Stanley. She maintains that when she clicked an "I Accept" button in Morgan Stanley's online job application portal, she did not have actual or reasonable notice of an arbitration agreement offered by Morgan Stanley and did not manifest her assent to arbitrate claims arising out of her job application.

Applying Massachusetts contract law, the Court concludes that Doe has the better of the arguments and will deny Morgan Stanley's motion. The nature of the transaction and the design of Morgan Stanley's online interface would not give a reasonable job applicant in Doe's position notice of the arbitration agreement, nor did that interface disclose the full scope of the terms and conditions offered by the company. Because Doe did not have an adequate opportunity to review the terms of the offer, she lacked reasonable notice of the arbitration agreement and its class action waiver provision and therefore formed no contract with Morgan Stanley.

Separately, Doe moves to proceed by using a pseudonym throughout this litigation. That motion will be denied because Doe has already submitted an affidavit to this Court signed with her real name, and thus has waived her request to shield her identity from public disclosure.

## BACKGROUND

"Where, as here, the motion to compel arbitration was made as part of a motion to dismiss or stay," the Court draws the relevant facts from "'the operative complaint and the documents submitted to the district court in support of the motion.'" *Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 203 n.2 (1st Cir. 2019) (citing *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 9 n.1 (1st Cir. 2017), *aff'd*, 139 S. Ct. 532 (2019)).

Doe applied to work at Morgan Stanley as a Senior Registered Service Associate in Boston on March 31, 2022. ECF 1, Exhibit A, ¶ 4; ECF 8-1, ¶ 21. She used a computer-based application when she applied. ECF 9-1, ¶ 3. From Morgan Stanley's public recruiting website, she first selected the job she wished to apply for and was then shown a screen with the job title, description, and position summary. ECF 8, at 4. She clicked a button that said "Apply Now" to proceed. *Id.* This brought her to another page with a more detailed job description that required her to click a button that said "Apply Online" at the top of the page. *Id.* After clicking that button, she created

an account with Morgan Stanley and then logged into Morgan Stanley's online portal for job applicants. *Id.*; ECF 8-1, ¶¶ 6, 9, 21.

Once logged into the portal, Doe was shown the following screen, entitled "Notice to Applicants and Acknowledgment":



*See* ECF 8-1, ¶ 16 & Exhibit 6.[1] The screen had a large purple bar at the top that said "Welcome. You are signed in." *Id.* Below that, in bold letters, were the words, "NOTICE TO APPLICANTS AND ACKNOWLEDGEMENT." *Id.* In the top right, in a blue hyperlink and a smaller font, were the words "Printable Format." *Id.* In the center of the screen was a text box, with a smaller header in bold: "Notice to Applicants and Acknowledgement." *Id.* The visible text was as follows:

---

[1] Doe submitted an affidavit stating that she used a computer-based application when she applied to the position at Morgan Stanley. ECF 9-1, ¶ 3. At the motion hearing, counsel for Morgan Stanley represented that this allegation was undisputed for purposes of the motion to compel. Thus, although the Krentzman Declaration submitted by Morgan Stanley attaches several versions of what this screen looked like depending on whether a smart phone, tablet, or computer was used, the parties agreed at the hearing that the operative screen, for purposes of the motion, is the screen that appears at Exhibit 6 to that declaration.

> By submitting your application, you agree to Morgan Stanley and/or its affiliates and/or subsidiaries and other third parties authorised by Morgan Stanley (collectively "Morgan Stanley Group") using the information contained in your application and any other personal information obtained about you during the recruitment process to confirm your references, to verify your educational background, to consider your application, to consider you for applicable diversity and inclusion initiatives and for any other purpose regarding your application or our current or future recruitment requirements, to comply with our obligations under applicable law or regulation and for purposes as specified herein and in the Morgan Stanley **Privacy Policy** (the "Purposes").

*Id.* (bold added for emphasis). The words "Privacy Policy" in the last line were in blue text indicating that they contained a hyperlink. *Id.* The final sentence was not truncated. *Id.* A scroll bar sat to the right. *Id.* Below the text box were two buttons, both oval shaped and blue. *Id.* One read "I Accept" and the other read "I Decline." *Id.*

If a job applicant viewing this screen were to use the scroll bar to scroll down, they would eventually reach the following text, which describes Morgan Stanley's Applicant Arbitration Agreement:

> In exchange for Morgan Stanley considering your application for employment, you agree that any disputes, claims and controversies based on, arising out of, or which arose out of or in any way relate to recruitment, applications for employment, decisions on applications or for employment, and the hiring, application, and/or recruitment processes ("Covered Claims") will be resolved by final and binding arbitration as set forth in the attached Applicant Arbitration Agreement. The Applicant Arbitration Agreement provides, among other things, that you and Morgan Stanley agree to have all Covered Claims resolved through final and binding arbitration on a non-class, non-collective, and non-representative basis, and that arbitration shall be the exclusive forum for any such Covered Claims. By selecting 'I Accept' below, you acknowledge that you have had the opportunity to receive, review, print and retain copies of the Applicant Arbitration Agreement and that, by submitting your application for employment, you accept and agree to, and will be covered and bound by the terms of the Applicant Arbitration Agreement. You have the option to opt out of this process within 30 days by completing and submitting the opt out form. If you submit your application for employment and do not timely opt out as instructed, you will be deemed to have consented and agreed to the terms of the Applicant Arbitration Agreement effective as of the date you submit your application for employment. You can review and print the Applicant Arbitration Agreement by clicking **here**, and you can review and print the opt out form by clicking **here**.

ECF 8-1, ¶ 10 & Exhibit 2 (bold added for emphasis).[2] The words "here" in the last sentence, bolded for emphasis above, were in blue text indicating that they contained a hyperlink to the Applicant Arbitration Agreement and the Opt-Out Form. *Id.* ¶¶ 10, 14 & Exhibits 1, 2, and 3.

If an applicant clicked on the first hyperlink, they could read the Applicant Arbitration Agreement. *Id.* ¶ 14 & Exhibit 1. That agreement requires the parties to arbitrate "any dispute, claim, or controversy between [the applicant], on the one hand, and Morgan Stanley or any of its current, former, or future directors, officers, employees, agents, managers, shareholders, on the other hand, whether initiated by [the applicant] or Morgan Stanley, based on, arising out of, or which arose out of or in any way relate to recruitment, applications for employment, decisions on applications or for employment, and the hiring, application, and/or recruitment processes." *Id.*, Exhibit 1. It further states that "NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD OR DETERMINED ON A CLASS ACTION, COLLECTIVE ACTION, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION." *Id.*

If an applicant clicked on the second hyperlink, and then completed and emailed the Opt-Out Form to the specified address within thirty days of submitting their application, they could opt out of the Applicant Arbitration Agreement. *Id.* ¶¶ 13, 23 & Exhibit 3. The Opt-Out Form states that the "decision to opt out of the Applicant Arbitration Program does not affect [the applicant's] candidacy for employment with Morgan Stanley." *Id.*, Exhibit 3.

To proceed with the application, an applicant had to click the button that said, "I Accept," but need not have scrolled down to review the text that was not visible on the initial screen, including the text about the Applicant Arbitration Agreement. *Id.* ¶¶ 15-17. Upon clicking "I

---

[2] Exhibit 2 excerpts some of the text that the applicant would see if she scrolled down. It does not portray all of the text.

Accept," a screen appeared asking for the applicant's name. *Id.* ¶ 18. The applicant then was asked to submit additional information about, among other things, their education and experience. *Id.*

Doe followed this process when she applied to the job with Morgan Stanley. *Id.* ¶ 20. She clicked the "I Accept" button, but does not recall seeing, reviewing, or agreeing to any of the terms regarding arbitration of claims. ECF 9-1, ¶ 4. She never completed or returned the Opt-Out Form to exempt herself from the Applicant Arbitration Agreement. ECF 8-1, ¶¶ 24-25.

On May 25, 2022, after undergoing a pre-hire review process, Doe was offered and accepted the position of Senior Registered Service Associate. ECF 1, Exhibit A, ¶ 5. The next day, Doe received an email informing her that she had to go through a criminal background check. *Id.* ¶ 6. During that process, she was asked to disclose information about her criminal history—including information about prior arrests that had not led to convictions—that is protected from disclosure under Massachusetts law. *Id.* ¶¶ 9-11 (citing M.G.L. c. 151B, § 4(9)). She complied with these requests for disclosure because she wanted the job at Morgan Stanley. *Id.* ¶ 11.

On August 12, 2022, Morgan Stanley rescinded Doe's job offer because of her criminal history, including the protected information she was asked to disclose. *Id.* ¶¶ 12-13. When Doe inquired whether any other positions at Morgan Stanley were available, Morgan Stanley responded that, as a matter of company policy, it did not hire anyone with a criminal record. *Id.* ¶ 14.

In December 2023, Doe filed this putative class action in Suffolk Superior Court on behalf of herself and other individuals who applied for employment at Morgan Stanley during the class period and who were subjected to allegedly unlawful inquiries or actions regarding protected criminal history information. *Id.* ¶ 20. She asserted that Morgan Stanley violated M.G.L. c. 151B, § 4(9), which makes it unlawful for an employer, "in connection with an application for employment . . . to request any information, to make or keep a record of such information, to use

any form of application or application blank which requests such information, or to exclude, limit or otherwise discriminate against any person by reason of his or her failure to furnish such information through a written application or oral inquiry or otherwise regarding," among other things, "an arrest, detention, or disposition regarding any violation of law in which no conviction resulted." ECF 1, Exhibit A, ¶¶ 27-29.

Invoking diversity jurisdiction, Morgan Stanley removed the case to this Court in February 2024. Shortly thereafter, Morgan Stanley moved to compel arbitration and dismiss Doe's complaint. Doe, in turn, filed a motion to proceed under a pseudonym.

## DISCUSSION

## I.   <u>Morgan Stanley's Motion to Compel Arbitration.</u>

The Federal Arbitration Act reflects both "the fundamental principle that arbitration is a matter of contract" and a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and quotation marks omitted). Its main substantive provision states that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Because "arbitration agreements are simply contracts," the "'first principle that underscores all" Supreme Court precedent interpreting the FAA "is that '[a]rbitration is strictly a matter of consent.'" *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024) (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019)).

"As a consequence of the FAA's contract-based philosophy, its liberal policy favoring arbitration 'is only triggered when the parties actually agreed to arbitrate.'" *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174 (1st Cir. 2021) (quoting *Rivera-Colón*, 913 F.3d at 207); *see Suski*, 144 S. Ct. at 1191 ("[D]isputes are subject to arbitration if, and only if, the parties

actually agreed to arbitrate those disputes."). The party seeking to compel arbitration bears the burden of proving "that a valid agreement to arbitrate exists." *Rivera-Colón*, 913 F.3d at 207; *see also Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 60 (1st Cir. 2018). To determine whether such a valid agreement exists, courts apply state contract law. *Air-Con*, 21 F.4th at 174; *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . apply ordinary state-law principles that govern the formation of contracts.").[3]

The parties agree that the dispute here is governed by Massachusetts law. Under Massachusetts contract law, "the party seeking to enforce an agreement to arbitrate must demonstrate both offer and acceptance." *Good v. Uber Techs., Inc.*, 494 Mass. 116, 126 (2024). In a case, like this one, involving an alleged contract that was nonnegotiable and standardized, "to show that a contract in fact was formed, 'there must be both . . . notice of the terms [of the contractual offer] and a reasonable manifestation of assent to those terms [so as to constitute acceptance of the offer].'" *Id.* (quoting *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 572 (2021)) (alterations in original). The party seeking to compel arbitration may demonstrate actual notice or reasonable notice of the terms of the offer. *Id.* at 127. Actual notice exists where the offeree has actually reviewed the terms or where the offeree was required to "'interact with the terms before agreeing to them,' including by scrolling through them." *Id.* (quoting *Kauders*, 486 Mass. at 572).

---

[3] Motions to compel arbitration are governed by the summary judgment standard. *Air-Con*, 21 F.4th at 174-75. Under that standard, "the court must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* at 175. "If the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." *Id.* (quoting 9 U.S.C. § 4).

There is no dispute here that Doe lacked actual notice of Morgan Stanley's Applicant Arbitration Agreement.

Even when an offeree does not have actual notice of the terms of an offer, "'[r]easonable notice of a contract's terms [may] exis[t] . . . , so long as the party had an adequate opportunity'" to review the offer. *Id.* (quoting *Archer v. Grubhub, Inc.*, 490 Mass. 352, 361 (2022)). A court must analyze the "totality of the circumstances" to determine whether reasonable notice of the terms of the offer was provided. *Id.* at 127-28; *Kauders*, 486 Mass. at 573. That test requires consideration of (1) "the nature, including the size, of the transaction," (2) "the interface by which the terms are being communicated," (3) "the form of the contract," and (4) "whether the notice conveys the full scope of the terms and conditions." *Good*, 494 Mass. at 128; *Kauders*, 486 Mass. at 573. Reasonable notice does not exist unless the offeror has notified the offeree that there *are* binding terms, like a term requiring arbitration of disputes, and the offeree has had an opportunity to review those terms. *Good*, 494 Mass. at 128; *Kauders*, 486 Mass. at 573.

Morgan Stanley contends that it provided Doe reasonable notice of the Applicant Arbitration Agreement through the Notice to Applicants and Acknowledgment screen on its online portal. In Morgan Stanley's view, this case bears strong resemblance to *Emmanuel v. Handy Technologies, Inc.*, 992 F.3d 1 (1st Cir. 2021), in which the First Circuit, applying Massachusetts law, concluded that a job applicant had reasonable notice that she was consenting to an arbitration agreement with a company whose app connected her with housecleaning jobs. Doe counters that the Supreme Judicial Court's decisions in *Good* and *Kauders* compel the conclusion that she lacked reasonable notice of the Applicant Arbitration Agreement and its class action waiver, that *Emmanuel* is distinguishable, and that she did not form a contract to arbitrate disputes with Morgan

Stanley. Whether Morgan Stanley provided Doe reasonable notice turns on application of the factors identified in *Good* and *Kauders*.

      A.    <u>The Nature and Size of the Transaction.</u>

      In analyzing the nature and size of the transaction, the Court considers the "perspective of 'reasonable people in the position of the parties.'" *Good*, 494 Mass. at 128-29 (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017)). The nature of the transaction here was the submission of a job application to a prospective employer, done at the early stages of the application process. From the perspective of a reasonable person, submitting a job application is a more consequential transaction than, for example, using a ride-sharing app to request a ride, *see Good*, 494 Mass. at 129, or purchasing a credit score, *see Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1030-31, 1034-36 (7th Cir. 2016) (cited with approval in *Kauders*, 486 Mass. at 573, 575, 577). In those circumstances, a reasonable consumer "may not have expected to be entering a contract at all." *Good*, 494 Mass. at 129. A reasonable job applicant would be more likely than the consumers in those circumstances to understand that a prospective employer may require acceptance of contractual terms.

      But context is important. *See Good*, 494 Mass. at 128 ("'The full context of any transaction is critical to determining whether any particular notice is sufficient to put a consumer on . . . notice of contractual terms contained on a separate, hyperlinked page.'" (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 458 (2021))). Morgan Stanley presented the Notice to Applicants and Acknowledgement screen to Doe at the very initial stage of the job application process. The circumstances are meaningfully distinct from *Emmanuel*, a case in which the plaintiff accepted the key arbitration agreement after "going through various screening processes . . . including completing an online application, participating in a telephone interview, undergoing a background

check, and attending an in-person training." 992 F.3d at 10. Consenting to the arbitration agreement came at the final step of the application process in *Emmanuel*; once accepted, the plaintiff could use the defendant's app to perform housecleaning jobs. *Id.* at 5.[4] Similarly, when rideshare drivers consent to arbitration agreements with ridesharing companies before they may use an app to provide rides, they are "[e]ntering a relationship for [their] livelihood," which is "far more consequential than seeking a ride." *Good*, 494 Mass. at 137.

Doe was presented with "Notice to Applicants and Acknowledgement" screen *before* she could take any meaningful steps in the job application process. She had not even given Morgan Stanley her name; that step in the process came after she clicked the "I Accept" button at the bottom of the screen. ECF 8-1, ¶¶ 15, 18. The substantive steps in the job application process— Doe's submission of information about her education and experience, her completion of a questionnaire for a pre-hire review, and her background check—all came after the display of the Notice to Applicants and Acknowledgement screen. ECF 1, Exhibit A, ¶¶ 4-6; ECF 8-1, ¶ 18. It is far from clear that a reasonable person in Doe's position would understand that the first step in applying for a job involved acceding to an expansive contract that contained an arbitration clause and class action waiver. In weight and solemnity, and on these facts, the initial step of applying for a job is qualitatively different than the completion of the job application process at issue in

---

[4] The plaintiff in *Emmanuel* had been presented with three arbitration agreements over the course of her relationship with the defendant. *See* 992 F.3d at 3-5. The First Circuit's conclusion that she had reasonable notice of the terms of the agreement was based on her acceptance of the second arbitration agreement, which came at the end of her job application process. *See id*. at 3, 8 ("We focus our analysis" on the plaintiff's "selection of 'Accept' on the screen containing the initial sentences of the Agreement on the Handy app on May 14, 2015."). But even when the plaintiff clicked a checkbox next to the words "I agree to Handy's Term of Use," which contained the first arbitration agreement, she had already been "required to provide personal information; describe her availability and past work experience; recount how she learned about Handy; indicate whether she had access to a smartphone, the Internet, a car, and a bank account; and attest to her ability to work legally in the United States." *Id.* at 3.

*Emmanuel*. *See* 992 F.3d at 10; *see also Kauders*, 486 Mass. at 575 (the nature of signing up to use ridesharing services is "qualitatively different from a large business deal where sophisticated parties hire legal counsel to review the fine print" and is "not comparable to the purchase or lease of an apartment or a car, where the size of the . . . transaction provides some notice of the contractual nature of the transaction even to unsophisticated contracting parties").

On balance, the Court concludes that the nature of size of the transaction here is more consequential than the consumer transactions at issue in *Good* and *Sgouros*, but less consequential than the completion of the job application process at issue in *Emmanuel*. A reasonable consumer in Doe's position would be unlikely to understand that the first step of a job application process entails acceptance of wide-reaching contractual commitments.

      B.      <u>The Online Interface and Form of the Contract.</u>

When, as here, "the nature of the transaction is such that a reasonably prudent consumer may proceed without realizing that she is also agreeing to a set of comprehensive contractual terms, a particular onus is placed on the offeror to ensure that the interface is designed to disabuse the user of that notion and to put the user on reasonable notice of the terms." *Good*, 494 Mass. at 129. The court must examine whether "the interface presented the terms in a manner that to a reasonable person in the user's circumstance would 'appear to be [a] contract.'" *Id.* at 130 (quoting *Kauders*, 486 Mass. at 573) (alteration in original).

A reasonable person viewing Morgan Stanley's Notice to Applicants and Acknowledgement screen would not immediately understand that contractual terms were being offered. The visible text on that screen did not use the words "contract" or "agreement," nor did it use phrases like "terms" or "terms and conditions" that typically refer to contractual agreements. *See, e.g.*, *Good*, 494 Mass. at 130 (pop-up screen used "Terms" or "Terms of Use" four times);

12

*Emmanuel*, 992 F.3d at 4 (screen referred to "Independent Contractor Agreement" and "Service Professional Agreement"); *Capriole v. Uber Techs., Inc.*, No. 1:19-cv-11941-IT, 2020 WL 1536648, at *2 (D. Mass. 2020) (screen was titled "Terms and Conditions," referenced "the contracts below," and referred to a "Technology Services Agreement"). Rather, the screen here referred twice to a "Notice" and "Acknowledgment"—words that may not, to a reasonable job applicant, call to mind contractual obligations. *Cf. Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 994-96 (Cal. Ct. App. 1992) (documents entitled "Acknowledgments of Order" did not constitute contracts in part because they were "not contractual in form," and thus arbitration clause contained in them was not enforceable). Unlike in *Good*, the Notice to Applicants and Acknowledgement screen did not contain a picture or graphic that would indicate to a reader that Morgan Stanley was offering contractual terms. *See* 494 Mass. at 132-33 ("The interface also alerted the otherwise unsuspecting user that a contract was being formed by displaying a large pictorial representation of signing a contract; specifically, a graphic of a clipboard holding a document marked by an 'X' alongside a pencil poised to sign it.").

Morgan Stanley contends that two elements of its Notice to Applicants and Acknowledgement screen—the language in the text box stating, "[b]y submitting your application, you *agree* to" Morgan Stanley's use of personal information, and the blue button below the text box reading "I Accept," ECF 8-1, Exhibit 6 (emphasis added)—would put a reasonable applicant on notice that they were agreeing to a contract. While those elements of the screen may arguably be understood by a reasonable applicant to allude to contract formation, they refer to the personal information disclosures and privacy policy which, as will be explained, are discrete topics that give scant indication of broader contractual terms. The Supreme Judicial Court has emphasized that, "especially where there is no face-to-face transaction between the contracting parties, it is

imperative that the interface convey to the user that a contract is being presented." *Good*, 494 Mass. at 129. The Notice to Applicants and Acknowledgement screen does not contain the kind of clear reference to an offer or contract seen in cases finding reasonable notice.

Nevertheless, Morgan Stanley points out, Doe could have used the scroll bar to scroll down to portions of the text that unequivocally convey that a contract is being presented—including the portions of the text that use the term "agreement" and summarize the terms of and link to the Applicant Arbitration Agreement. In *Emmanuel*, the First Circuit found the reasonable notice requirement satisfied even though the job applicant had to scroll down to see the terms concerning arbitration. *See* 992 F.3d at 9. Central to the First Circuit's holding, however, was the fact that "the screen displaying the portion of the Agreement that was plainly visible before [the plaintiff] selected 'Accept' made clear that additional text further specifying the terms of the Agreement could be viewed by scrolling." *Id.* Indeed, the First Circuit emphasized, the final visible sentence on the pop-up screen was "truncated in a manner that suggested that additional text continued below what was revealed initially." *Id.* Here, in contrast, the final visible sentence is not truncated. And, aside from the existence of the small scroll bar to the right of the text box, the visible text provides no instruction or encouragement for the reader to scroll down in order to review more of the Notice to Applicants and Acknowledgement. *Contra Good*, 494 Mass. at 131 (pop-up screen "clearly and expressly stated," in "prominent typeface," "'We encourage you to read our updated Terms in full'"). Thus, unlike in *Emmanuel*, there is no "visible text [that] explicitly referred to later portions of the Agreement" or any visual cues indicating that more contractual terms lay

14

below the visible text. 992 F.3d at 9. And the scroll bar itself is inconspicuous enough that a reasonable person could easily overlook it.[5]

The Court must also consider "the language used to notify the user of the terms, the prominence with which the hyperlink, if any, to the terms was displayed, and the clarity and extensiveness of the process to access the terms, along with 'any other information that would bear on the reasonableness of [the] communicati[on of the terms].'" *Good*, 494 Mass. at 130 (quoting *Kauders*, 486 Mass. at 573) (alteration in original). These considerations are more mixed. On the one hand, had a job applicant scrolled down, they would have seen the summary of the arbitration agreement in the text box itself. Unlike in *Kauders*, which involved an interface that required a user to click a hyperlink to see the terms of the offer, Morgan Stanley's interface included much of the text of the arbitration agreement in the text box, even though the agreement itself was accessible only by hyperlink. *See* 486 Mass. at 560, 576-78. This design characteristic favors reasonable notice.

On the other hand, to get to that summary of the arbitration agreement in the text box, an applicant would first have to scroll through a long page of text portrayed in a small font.[6] Unlike in *Good*, where the "interface addressed only the terms of use and accompanying privacy notice," the text box here addressed a smorgasbord of topics. 494 Mass. at 131-32. Among other things, it

---

[5] Nor did the visible hyperlink reading "Printable Format," which linked to the entire text of the Notice to Applicant and Acknowledgement screen, give reasonable notice of all of the terms being offered by Morgan Stanley. As the Seventh Circuit explained, a hyperlink with the words "Printable Version" does not provide a "clear statement" that the reader might be "subject to *any* terms and conditions." *Sgouros*, 817 F.3d at 1035 (emphasis in original). The "Printable Format" text here is small relative to the rest of the text on the screen and does not signal that terms beyond those in the visible text would be presented if the applicant clicked the hyperlink.

[6] Morgan Stanley did not provide the Court with a copy of the full Notice to Applicants and Acknowledgement. When asked at the motion hearing, counsel for Morgan Stanley confirmed that Exhibit 2 to the Krentzman Declaration is an excerpt of that Notice, and that the full Notice is a longer document that contains more text.

alerted Doe that Morgan Stanley does not discriminate on the basis of protected characteristics, informed her that she may be asked to undergo pre-employment testing, informed her that she would be an at-will employee, and notified her of the background check process. ECF 8-1, Exhibit 2. Had Doe or a reasonable applicant in her shoes scrolled down, the volume of small print would have "distracted from" the summary of the arbitration agreement, which was "buried on a cluttered screen [and] presented inconspicuously at the tail end of a cumbersome" text box. *Good*, 494 Mass. at 131-32. The Notice to Applicants and Acknowledgment screen was not, accordingly, the type of "focused and uncluttered" interface that supports a finding of reasonable notice. *Id.* at 117.

All in all, Morgan Stanley's interface did not present the terms of the Applicant Arbitration Agreement in a manner that would lead a reasonable person to understand that they were assenting to a contract to arbitrate disputes with the company.

C.     <u>Whether the Notice Conveyed the Full Scope of the Terms and Conditions.</u>

Finally, the Court considers whether the Notice to Applicants and Acknowledgement screen conveyed the full scope of the terms and conditions. As described, a job applicant was required to scroll down below the visible text to reach the summary of, and hyperlink to, the arbitration agreement. The text that *does* appear in the text box provides notice that, by submitting an application, applicants agree to Morgan Stanley's use of their personal information for various purposes, in order "to comply with [the company's] obligations under applicable law or regulation[s] and for purposes as specified herein and in the Morgan Stanley Privacy Policy." ECF 8-1, Exhibit 6. A reasonable job applicant would understand from this visible text that Morgan Stanley may make use of their personal information. But, aside from the scroll bar, the applicant would have no visual cue that they might also be consenting to other binding terms by clicking the "I Accept" button.

The parsimonious presentation of information on the Notice to Applicants and Acknowledgement screen here is analogous to the screen considered in *Sgouros v. TransUnion Corporation*, 817 F.3d 1029 (7th Cir. 2016), a decision relied on by the Supreme Judicial Court in *Kauders*. *See Kauders*, 486 Mass. at 573, 575, 577. In *Sgouros*, the visible text "told the user that clicking on the box constituted his authorization for [a credit agency] to obtain his personal information," but said "nothing about contractual terms." 817 F.3d at 1035. This selective presentation of information, the Seventh Circuit explained, "actively misleads the consumer." *Id.* Here, too, the visible text in Morgan Stanley's screen alerted job applicants that they were providing authorization for the company to use their personal information in accordance with a privacy policy, but nothing more. Presented with a notice that concerned personal information, when the arbitration agreement and other terms were buried out of sight, "[n]o reasonable person would think that hidden within th[e] disclosure was also the message that the same click constituted acceptance of the [Arbitration] Agreement." *Id.*; *see also Kauders*, 486 Mass. at 577 ("the design of the interface for the app here enables, if not encourages, users to ignore the terms and conditions"). The Notice to Applicants and Acknowledgement screen does not convey the full scope of the terms of the contract to a reasonable job applicant.

*       *       *

The totality of the circumstances leads the Court to conclude that Doe did not have reasonable notice of the terms of the Applicant Arbitration Agreement when she was presented with the Notice to Applicants and Acknowledgement screen. Consideration of the nature and size of the transaction, the design of the interface, the form of the contract, and whether the notice

17

conveyed the full scope of the terms of the offer undergirds that conclusion.[7] Because Morgan Stanley did not carry its burden to show it provided Doe with reasonable notice of the arbitration agreement, a contract was not formed, and the Court need not consider whether Doe manifested her assent by clicking the "I Accept" button. *See Kauders*, 486 Mass. at 579 ("As we conclude that there was not reasonable notice of the terms, a contract cannot have been formed here."). Further, because a contract was not formed with respect to the Applicant Arbitration Agreement, no contract was formed with respect to the class action waiver contained within that agreement. Morgan Stanley's motion to compel arbitration and dismiss this action is, accordingly, denied.

## II.      Doe's Motion to Proceed by Pseudonym.

The Court turns next to Doe's motion, opposed by Morgan Stanley, to proceed under a pseudonym throughout this litigation. The presumption against pseudonymous litigation gives way only in "exceptional cases." *Doe v. M.I.T.*, 46 F.4th 61, 67 (1st Cir. 2022) (citing *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022)). A threat to reputation, on its own, is not sufficient to justify proceeding under a pseudonym. *Id.* at 70. In determining whether a case is "exceptional," a district court must apply a "totality of the circumstances" test, looking in particular to four non-exhaustive paradigms that ordinarily satisfy that test. *Id.* at 70-72. Relevant here, the third paradigm "involves cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated." *Id.* at 71. Among the cases that typically fall into this paradigm are "those in which 'the injury litigated against would be incurred as a result of the disclosure of the [party's identity].'" *Id.* (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)) (alterations in original).

---

[7] For the same reasons that Doe did not have reasonable notice of the arbitration agreement, she also lacked reasonable notice of the availability of the Opt-Out Form.

Doe contends that her case fits under the third paradigm because Massachusetts law prohibits employers from asking job applicants and workers whether they have been arrested but not convicted, or whether they have been convicted of certain misdemeanors, and further prohibits discrimination on the basis of that information. M.G.L. c. 151B, § 4(9). This prohibition, she maintains, reflects the Legislature's recognition of the unique harms that flow from the disclosure of minor criminal history, harms that disproportionately burden job applicants and workers of color. Proceeding by pseudonym is necessary, in Doe's view, because otherwise vindicating those statutory rights would require a plaintiff to expose to the world—and, more specifically, to future employers—the very information protected by statute. The resultant harm to career prospects could deter future plaintiffs from pursuing litigation when those rights are violated. Morgan Stanley counters that the possible reputational harm that might be caused by disclosure of criminal history does not justify proceeding by pseudonym, even when the criminal record in question has been expunged. *See, e.g.*, *Doe v. Rentgrow, Inc.*, No. 23-cv-10572-NMG, 2023 WL 4354000, at *2 (D. Mass. July 5, 2023).

Doe's argument carries significant force. *Cf. Doe v. Town of Lisbon*, 78 F.4th 38, 46-47 (1st Cir. 2023) (a state-created regime of confidentiality is due some respect in the federal system). Nevertheless, on the facts of this case, the Court need not determine whether a plaintiff asserting a violation of M.G.L. c. 151B, § 4(9) may proceed by pseudonym, because First Circuit precedent forecloses Doe's motion. In opposing Morgan Stanley's motion to compel arbitration, Doe submitted an affidavit with her real name signed at the bottom. ECF 9-1. The First Circuit has said unequivocally that "pseudonymity will *never* be justified when the public disclosure that the party seeks to forestall is already a fact." *M.I.T.*, 46 F.4th at 72 n.3 (emphasis added) (citing *Kansky v.*

19

*Coca-Cola Bottling Co. of New England*, 492 F.3d 54, 56 n.1 (1st Cir. 2007)).[8] To be sure, in this case, the name of the plaintiff is at the bottom of a single affidavit, whereas the plaintiff in the *Kansky* case, cited by the First Circuit in *M.I.T.*, had been litigating under his own name prior to his motion to proceed by pseudonym. *See Kansky*, 492 F.3d at 56 n.1. But Doe's motion makes no argument to distinguish *M.I.T.* and *Kansky*, nor does she maintain that her use of her name on the publicly filed affidavit does not constitute "public disclosure." She has not moved to seal the affidavit. In light of the First Circuit's holding in *M.I.T.*, this Court must deny Doe's motion. Because orders denying motions to proceed by pseudonym are immediately appealable under the collateral order doctrine, *M.I.T.*, 46 F.4th at 66, Doe will not be required to proceed under her real name until the deadline to appeal this order passes. *See* Fed. R. App. P. 4(a).

## CONCLUSION AND ORDER

For the foregoing reasons, the defendant's motion to compel arbitration and dismiss the complaint, ECF 7, is DENIED. The plaintiff's motion to proceed under a pseudonym, ECF 13, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: August 6, 2024

---

[8] Morgan Stanley similarly argues that because Doe already disclosed her name to the Massachusetts Commission Against Discrimination ("MCAD"), she cannot proceed by pseudonym here. *See, e.g.*, *Doe v. Trs. of Dartmouth Coll.*, No. 18-cv-690-JD, 2018 WL 5801532, at *5 (D.N.H. Nov. 2, 2018); *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995). MCAD complaints are accessible by a public records request, but unlike federal court filings, are not available on a public docket. *See generally* 804 C.M.R. § 1.21. Because Doe disclosed her identity on this Court's docket, the Court need not reach Morgan Stanley's argument about the MCAD proceedings. *See M.I.T.*, 46 F.4th at 72 n.3.